P. STERLING KERR, ESQ.
Nevada Bar No. 3978
GEORGE E. ROBINSON, ESQ.
Nevada Bar No. 9667
LAW OFFICES OF P. STERLING KERR
2450 St. Rose Parkway, Suite 120
Henderson, Nevada 89074
Telephone No. (702) 451–2055
Facsimile No. (702) 451-2077
Email: sterling@sterlingkerrlaw.com
Email: george@sterlingkerrlaw.com
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| INTERNATIONAL MARKETS LIVE, INC., a New York corporation dba iMARKETSLIVE;<br><br>Plaintiffs,<br><br>v.<br><br>CHRISTIAN BAPTISTE dba IWC FX;<br><br>Defendants. | Case No.:<br><br>COMPLAINT FOR:<br><br>1) BREACH OF CONTRACT;<br>2) VIOLATION OF UNIFORM TRADE SECRETS ACT<br>3) DEFAMATION PER SE;<br>4) TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS; and<br>5) TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE; |

COMES NOW, Plaintiff by and through its attorneys, the Law Offices of P. Sterling Kerr, complain and allege against Defendant CHRISTIAN BAPTISTE dba IWC FX (hereinafter "BAPTISTE") as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff International Markets Live ("IML") is a New York limited liability company with corporate offices in Las Vegas, NV.

2. Defendant BAPTISTE, is an individual that is a resident of New Jersey who conducts business throughout the world, including in Nevada.

3. This Court has diversity subject matter jurisdiction of this action. The Court has diversity jurisdiction under 28 U.S.C. § 1332 because no Plaintiffs and Defendants are residents of the same state, and because the amount in controversy, exclusive of interest and costs, exceeds seventy-five thousand dollars ($75,000.00).

Page **1** of **8**

4.  Venue is proper as IML has corporate offices in the state of Nevada, and all of the parties conduct business in the state of Nevada.

## GENERAL ALLEGATIONS

5.  IML is a company that provides its customers with educational tools and information to trade foreign and crypto currencies ("Forex Trading").

6.  IML's products are distributed under a direct sales model and are offered to individuals on a subscription basis. IML's products help IML provide customers with technology, education, and research for Forex Trading.

7.  IML contracts with IBOs in an independent contractor relationship to effectuate the direct sales model of its products and services. These contracts are called Independent Business Owner ("IBO") Agreements.

8.  All IML IBOs become IBOs of IML products only after entering into an IBO Agreement requiring the IML distributor to agree to IML's Policies and Procedures.

9.  The IBO states that each distributor has carefully read and agrees to comply with IML's Policies and Procedures.

10. IML's Policies and Procedures require, among other things, that:

- IBOs may not directly or indirectly recruit other IBOs or customers for other network marketing businesses;

- IBOs may not participate as a distributor in another network marketing company that sells and distributes similar products to IML;

- IBOs must not sell, or attempt to sell, any competing non-IML programs, products, or services to IML IBOs or customers;

- The Confidentiality Provision in the Policies and Procedures states:

> During the term of the Agreement, Company may supply to Independent Affiliates confidential information, including, but not limited to genealogical and Downline reports, customer lists, customer information developed by Company or developed for and on behalf of Company by Independent Affiliates (including, but not limited to, credit data, customer and Independent Affiliate profiles and product purchase information), Independent Affiliate lists, manufacturer and supplier information, business reports, commission or dales reports and such other financial and business information which Company may designate as confidential.  All such information (whether in written or electronic format) is proprietary and confidential to

      Company and is transmitted to Independent Affiliates in strictest confidence on a "need to know" basis for use solely in Independent Affiliates business with Company. Independent Affiliates must use their best efforts to keep such information confidential and must not disclose any such information to any third party, or use this information for any non-company activity directly or indirectly while on Independent Affiliate and thereafter.

11. On or about May 2, 2017, Defendant BAPTISTE entered into an IBO Agreement requiring the IBO to agree to IML's Policies and Procedures.

12. At all times relevant herein, BAPTISTE knew and were aware of the terms of the IML Policies and Procedures, including the prohibitions against recruiting IML IBOs and traders to leave IML, the prohibition against working for a competitor of IML, and the prohibition against providing Confidential Information and intellectual property to anyone outside of IML.

13. BAPTISTE breached the IML Policies and Procedures.

14. BAPTISTE breached his contract with IML by, among other things, leaving IML and immediately starting a competing company, IWC FX.

15. BAPTISTE has conspired to bribe, solicit, recruit, and entice other IML IBOs, customers, and traders away from IML and to IWC FX.

16. BAPTISTE bribed, solicited, recruited, and enticed other IML IBOs and traders away from IML and to IWC FX.

17. BAPTISTE intentionally and knowingly bribed, solicited, enticed, and recruited IML IBOs and traders to leave IML and to work for IWC FX.

18. BAPTISTE knowingly, intentionally, and wrongfully took Confidential Information and intellectual property from IML.

19. BAPTISTE knowingly, intentionally, and wrongfully gave the Confidential Information and intellectual property they took from IML to IWC FX.

20. BAPTISTE used the Confidential Information and intellectual property that he stole from IML to recruit customers to IWC FX.

21. BAPTISTE knowingly and intentionally published false statements on social media platforms regarding IML, its employees, and IBOs.

22. Defendants published these false statements against IML in order to promote himself as IWC FX.

23. IML suffered financial harm as a result of BAPTISTE's wrongful conduct.

## FIRST CLAIM FOR RELIEF

(Breach of Contract)

24. IML incorporates by reference and reaffirms each and every allegation previously asserted as if fully set forth herein.

25. BAPTISTE entered into, or otherwise agreed to be, and were bound by a contract with IML.

26. At all relevant times herein, IML performed the obligations and duties required of it by the contract it entered into with BAPTISTE.

27. BAPTISTE breached his contract with IML by failing to conform to the terms of their respective agreement(s), namely by taking confidential and trade secret information from IML for use by his company in direct competition with IML.

28. The breach of the contract by BAPTISTE have caused damages to IML excess of one million dollars ($1,000,000.00).

29. IML is entitled to its reasonable attorney's fees due to Defendant's breach of the agreements.

## SECOND CLAIM FOR RELIEF

(Misappropriation and Violation of Uniform Trade Secrets Act – Nevada Revised Statues Chapter 600A against all Defendants)

30. IML incorporates by reference and reaffirms each and every allegation previously asserted as if fully set forth herein.

/ / /

31. Defendant acquired IML's trade secrets by an improper means, including stealing or misappropriating the trade secrets from IML.

32.     Defendant misappropriated IML's trade secrets by disclosing the trade secrets without express or implied consent from IML, including those trade secrets that were obtained without authorization from IML.

33.     Defendant further misappropriated IML's trade secrets by using the trade secrets without express or implied consent from IML.

34.     Defendant had a duty to maintain the secrecy of IML's trade secrets.

35.     As a result of Defendant's misappropriation of IML's trade secrets, IML has suffered damages to be determined at trial in excess of one million dollars ($1,000,000.00).

36.     IML is entitled to exemplary damages due to Defendant's willful and malicious misappropriation of IML's trade secrets in excess of one million dollars ($1,000,000.00).

37.     IML is entitled to its reasonable attorney's fees and costs due to Defendant's willful and malicious misappropriation of IML's trade secrets.

## THIRD CLAIM FOR RELIEF

(Defamation Per Se against Defendants)

38.     IML incorporates by reference and reaffirms each and every allegation previously asserted as if fully set forth herein.

39.     Defendant made statements on social media which tend to harm the reputation of the IML in the estimation of the community and deter third persons from associating or dealing with IML.

40.     The statements are false.

41.     The statements were intentionally published on the internet.

42.     The statements constitute the imputation that IML has a lack of fitness for trade, business, or profession.

/ / /

43.     As a direct and proximate result of Defendant's defamatory acts, IML has been harmed in amount in excess of one million dollars ($1,000,000.00).

44. It has been necessary for IML to retain the services of an attorney to prosecute this action and, therefore, IML is entitled to reasonable attorney's fees and costs.

### FOURTH CLAIM FOR RELIEF

(Tortious Interference with Contractual Relations against Defendants)

45. IML incorporates by reference and reaffirms each and every allegation previously asserted as if fully set forth herein.

46. IML had contractual relationships with customers and individual representatives who are receiving educational products for Forex markets in exchange for monetary compensation.

47. Defendant knew of these relationships.

48. Defendant spread false information and used IML's confidential information and trade secrets to form relationships with IML's customers for BCFX's gain.

49. Defendant's conduct was not legally justified.

50. As a direct and proximate result of Defendant's interference with IML's contractual relationships, IML has been harmed in amount in excess of one million dollars ($1,000,000.00).

51. It has been necessary for IML to retain the services of an attorney to prosecute this action and, therefore, IML is entitled to reasonable attorney's fees and costs.

### FIFTH CLAIM FOR RELIEF

(Tortious Interference with Prospective Economic Advantage against Defendants)

52. IML incorporates by reference and reaffirms each and every allegation previously asserted as if fully set forth herein.

/ / /

/ / /

53. IML had prospective contractual relationships with customers and individual representatives who desired to participate in receiving educational products for Forex markets.

54. Defendant knew of these prospective relationships.

55. Defendant spread false information and used IML's confidential information and trade secrets with the intent of preventing and inhibiting IML's relationships with the prospective customers.

56. Defendant's conduct was not legally justified.

57. As a direct and proximate result of Defendant's interference with the prospective customer relationships, IML has been harmed in amount in excess of one million dollars ($1,000,000.00).

58. It has been necessary for IML to retain the services of an attorney to prosecute this action and, therefore, IML is entitled to reasonable attorney's fees and costs.

WHEREFORE, PLAINTIFF PRAYS FOR

THE FOLLOWING RELIEF AGAINST DEFENDANTS:

1. For Damages in an amount greater than $1,000,000.00 as a result of Defendant's unlawful actions;

2. For injunctive relief to enjoin the Defendant from the following:

- Defendant shall immediately refrain from using any IML customer list, trademark, trade secret, program information, or any other confidential information and/or materials, including downlines, back-office data, binary options trading software, and binary options trading algorithms;

- Defendant shall immediately refrain from disclosing any IML customer list, trademark, trade secret, program information, or any other confidential information and/or materials;

- Defendant shall immediately return any equipment, or other materials, including but not limited to, hard copies of documents and/or data, electronic copies of documents and/or data, emails, and any other material containing or referring to any

IML customer list, trademark, trade secret, program information, or any other confidential information and/or materials;

- Defendant shall immediately refrain from conducting and soliciting any business, accepting any employment by or rendering professional services to, any person or organization that is or was a IML distributor, trader, and/or client, which includes that BCFX shall not conduct business with those Defendant who are former IML IBOs or traders; and

- Defendant shall immediately refrain from soliciting, recruiting, bribing, and/or enticing IML IBOs and/or traders to violate their contracts with IML and/or misappropriate IML's Confidential Information and/or intellectual property.

3. For an award of pre-judgment interest, as well as reasonable attorneys' fees as both normal and special damages, and other costs; and

4. For such other and further relief that this Court deems just and proper.

Dated this 24th day of August, 2018

                                    LAW OFFICES OF P. STERLING KERR

                                    */s/ P. Sterling Kerr, Esq.*
P. STERLING KERR, ESQ.
Nevada Bar No. 3978
GEORGE E. ROBINSON, ESQ.
Nevada Bar No. 9667
LAW OFFICES OF P. STERLING KERR
2450 St. Rose Parkway, Suite 120
Henderson, Nevada 89074
Telephone No. (702) 451-2055
Facsimile No. (702) 451-2077
Email: sterling@sterlingkerrlaw.com
Email: george@sterlingkerrlaw.com
*Attorneys for Plaintiff*